IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TIDELANDS BANCSHARES, INC, ) <br> and TIDELANDS BANK, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> ROBERT E. COFFEE, ) <br> ) <br> Defendant. ) <br> ) | No. 2:14-cv-2729-DCN <br><br> **ORDER** |

This matter is before the court on defendant Robert Coffee's ("Coffee") motion to dismiss or, in the alternative, to stay the proceedings. For the reasons set forth below, the court grants Coffee's motion to stay.[1]

## I.  BACKGROUND

Tidelands Bank is a South Carolina chartered bank and a wholly owned subsidiary of Tidelands Bancshares. Compl. ¶¶ 1, 2. Coffee was the president and chief executive officer of Tidelands from 2003 until his termination on April 4, 2011. Pls.' Resp. 1. Coffee filed a complaint against Tidelands in the Charleston County Court of Common Pleas on or around December 29, 2011, and amended his complaint on March 21, 2014. Coffee's amended complaint alleges claims of breach of contract as well as various fraud claims. Pls.' Resp. 3-4.

---

[1] Because the court grants Coffee's motion to stay, it does not discuss his alternative motion to dismiss.

1

Coffee's underlying amended state court complaint alleges that on May 1, 2008, he entered into an employment agreement with Tidelands. Am. State Ct. Compl. ¶ 38. The employment agreement provided that:

> none of the conditions or events included in the definition of the term "golden parachute payment" that is set forth in Section 18(k)(4)(A)(ii) of the Federal Deposit Insurance Act [12 U.S.C. 1828(k)(4)(A)(ii)] and in Federal Deposit Insurance Corporation Rule 359.1(f)(1)(ii) [12 C.F.R. 359.1(f)(1)(ii)] exists or, to the best knowledge of the Employer, is contemplated insofar as the Employer or any affiliates are concerned.

Id. ¶ 64.[2] On or around December 19, 2008, Tidelands Bancshares became a participant in the Department of Treasury's Troubled Assets Relief Program ("TARP") Capital

---

[2] Under the authority of the Federal Deposit Insurance Act, 12 U.S.C. 1828(k), FDIC Rule 12 C.F.R. § 359.1(f)(ii) provides that:
> Golden parachute payment.    (1) The term golden parachute payment means any payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution or an affiliated depository institution holding company for the benefit of any current or former IAP pursuant to an obligation of such institution or holding company that:
> (i)  Is contingent on, or by its terms is payable on or after, the termination of such party's primary employment or affiliation with the institution or holding company; and
> (ii) Is received on or after, or is made in contemplation of, any of the following events:
>   (A) The insolvency (or similar event) of the insured depository institution which is making the payment or bankruptcy or insolvency (or similar event) of the depository institution holding company which is making the payment; or
>   (B) The appointment of any conservator or receiver for such insured depository institution; or
>   (C) A determination by the insured depository institution's or depository institution holding company's appropriate federal banking agency, respectively, that the insured depository institution or depository institution holding company is in a troubled condition, as defined in the applicable regulations of the appropriate federal banking agency (§ 303.101(c) of this chapter); or
>   (D) The insured depository institution is assigned a composite rating of 4 or 5 by the appropriate federal banking agency or informed in writing by the Corporation that it is rated a 4 or 5 under the Uniform

Purchase Program and received funds, pursuant to this program. Compl. ¶ 11. On June 1, 2010, FDIC and the South Carolina Board of Financial Institutions conducted a joint examination of Tidelands. Id. ¶ 42. As a result of that examination, on or around October 10, 2010, "Tidelands was officially designated as being in a 'troubled condition' as defined by 12 C.F.R. § 303.10(c), Tideland's safety and soundness composite rating was lowered and Tidelands was obligated to enter into a formal supervisory enforcement action." Id. ¶ 15. On April 4, 2011, Tidelands terminated Coffee without cause. Am. State Ct. Compl. ¶ 61. Coffee did not receive ninety days written notice of his termination as required in the employment agreement. Id. ¶ 63. Additionally, Tidelands did not pay Coffee his severance benefits as provided in the employment agreement. Id. ¶¶ 79, 80.

Tidelands asserts payment of severance benefits would constitute a golden parachutes payment and is therefore prohibited. Id. ¶ 92. Coffee claims, among other things, that Tidelands knew or should have known the employment agreement included provisions "that the Federal Deposit Insurance Corporation ("FDIC") would interpret to be within the definition of the term 'golden parachute payment,' and failed to disclose such knowledge to [him]." Id. ¶ 65. Had Coffee known of the possibility that the severance provisions did or could constitute golden parachute payments, he contends "he would not have entered into the Employment Agreement as written." Id. ¶ 67.

---

Financial Institutions Rating System of the Federal Financial Institutions Examination Council, or the depository institution holding company is assigned a composite rating of 4 or 5 or unsatisfactory by its appropriate federal banking agency; or
(E) The insured depository institution is subject to a proceeding to terminate or suspend deposit insurance for such institution.

Tidelands filed a declaratory judgment action in this court on July 3, 2014 to determine whether it correctly interpreted certain provisions of the Federal Deposit Insurance Act in denying Coffee severance under his employment agreement. Compl. ¶ 46. Tidelands asserts that 12 U.S.C. 1828(k), 12 C.F.R. § 359.1(f)(ii), and 12 C.F.R. § 303.10(c) have been "the applicable statute and regulatory provisions governing the definition, regulation and prohibition of "golden parachute payments" since about May 1, 2008. Id. Tidelands argues none of the conditions or events defining golden parachute payments were present at the time Coffee entered into the employment agreement. Id. Rather, it argues such conditions only arose on or after October of 2010, when Tidelands received a "troubled condition" designation, received a low safety and soundness rating, and was subject to a formal supervisory enforcement action. Id. Therefore, Tidelands argues, it did not make any misrepresentations as to whether the severance provisions did or could constitute golden parachute payments in the golden payment clause and was correct in denying Coffee severance upon his termination. Id.

On July 25, 2014, Coffee filed a motion to dismiss Tidelands' federal action or, in the alternative, to stay this case pending resolution of the underlying state court action. Tidelands responded on August 11, 2014. The motion has been fully briefed and a hearing was held on September 15, 2014. The matter is ripe for the court's review.

## II. STANDARD

"A court has the power to stay proceedings, which is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" Doe v. Bayer Corp., 367 F. Supp. 2d 904, 914 (M.D.N.C. 2005) (quoting Landis v. N. Am. Co., 299 U.S. 248,

254 (1936)).  In exercising its authority to grant a discretionary stay, the court "must weigh competing interests and maintain an even balance."  Landis, 299 U.S. at 254, 255 (citing Kansas City S. Ry. Co. v. United States, 282 U.S. 760, 763 (1931).  Furthermore, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative."  Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983).

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995).  When another suit is pending in a state court involving the same parties and providing the same opportunity for relief, a district court has "wide discretion" in deciding whether to stay or dismiss the declaratory judgment action.  See Centenial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir. 1996) (citing Wilton, 515 U.S. at 289).

### III. DISCUSSION

Coffee argues that this court should stay the declaratory judgment action because: (1) the parties are the same in both actions; (2) the claims are identical and have been "actively litigated" in state court for the past two and a half years; and (3) Tidelands is seeking to forum shop by bringing the declaratory judgment action so late into the underlying state court proceedings.  Def.'s Mot. 2, 8.  Tidelands responds that this action will focus on the federal questions of law "necessarily raise[d]" by Coffee's state court claims, and therefore the issues differ from those in the state court litigation.  Pls.' Resp. 13.  Tidelands further responds it is merely exercising its legal right, and there are no facts that indicate procedural fencing.  Pls.' Resp. 14.

5

The Fourth Circuit has articulated four factors for courts to consider when determining whether to exercise jurisdiction under the Declaratory Judgment Act:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004) (quoting United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493-94 (4th Cir. 1998)).  These factors are commonly called the "Nautilus factors," after the Fourth Circuit's opinion in Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371 (4th Cir. 1994).   When considering these factors, the court should be guided by "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts."  Poston, 88 F.3d at 257.  A more detailed discussion of the Nautilus factors follows.

### A.     South Carolina's Interest in Resolving the Issues

The first factor asks the court to determine whether South Carolina has a strong interest in deciding the issues raised in the federal declaratory action in its courts.  When the federal action is only deciding state law claims, a state's interest is particularly strong when the "state law issues [are] 'difficult' or 'unsettled.'"  Nautilus Ins. Co., 15 F.3d at 378.  If the "questions of state law raised in the federal action . . . involve the routine application of settled principles of law to particular disputed facts," then the state's interest is diminished.  Id.

As an initial matter, it does not appear that Coffee's state-based claims present difficult or unsettled issues. Additionally, this declaratory judgment action asks the court to focus on the application of federal law to those claims. However, to the extent Coffee's claims raise federal issues, "'[u]nder our system of dual sovereignty, . . . state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.'" Lippincott v. PNC Bank, N.A., 2012 WL 1894275 (D. Md. May 22, 2012) (citations omitted).

Accordingly, this factor is not helpful in resolving this motion.

### B.     South Carolina's Ability to Resolve the Issues More Efficiently

The second factor requires the court to consider whether the state court can resolve the issues more efficiently than the federal court. According to the Fourth Circuit, "[i]n evaluating these efficiency concerns, the Supreme Court has directed us to focus primarily on 'whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceedings' that are already 'pending in the state courts.'" Nautilus Ins. Co., 15 F.3d at 378 (quoting Brillhart v. Excess Ins. Co., 316 U.S. 491, 495 (1942)). The Supreme Court has found it would be "uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues . . . between the same parties." Brillhart, 316 U.S. at 495.

For over two and a half years, Tidelands and Coffee have been litigating the claims giving rise to this declaratory judgment action in state court.[3] The state court is

---

[3] It is the court's understanding that the state court has set the case for trial in January 2015. Since the federal case wasn't held until July 2014, in all likelihood it couldn't be

familiar with the facts of this case as it has already presided over numerous motions and scheduling orders. Def.'s Mot. 7. Additionally, the ongoing discovery in the state action involves the same interests at issue here. Moreover, because Tidelands asserts the application of FDIC rules and regulations as defenses to Coffee's claims in the state action, it is "inevitable" that these issues will "arise before that court." Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 967 (4th Cir. 1994). Therefore, "[t]his court's interference with the pending state court proceeding would [] produce inefficiencies by needlessly duplicating efforts, generating piecemeal litigation, and expending limited judicial resources." Riley v. Dozier Internet Law, PC, 371 F. App'x 399, 403 (4th Cir. 2010); see also Beach Cove Assocs. v. U.S. Fire Ins. Co., 903 F. Supp. 959, 963 (D.S.C. 1995) ("Efficiency dictates that resolution of issues stemming from one controversy should be resolved by one court.").

Accordingly, this factor weighs heavily in favor of staying the declaratory judgment action.

### C.     Entanglement Between State and Federal Court

The third factor requires the court to inquire whether "overlapping questions of fact or law" might create unnecessary "entanglement" between the state and federal court. Kapiloff, 155 F.33d at 493-94. "To avoid interfering with the progress of a state court action, a district court should not render decisions in a declaratory judgment action on factual and legal issues that will also be decided in a state court action." Mitcheson v. Harris, 955 F.2d 235, 239 (4th Cir. 1992).

---

resolved until late 2015 or early 2016. Therefore, it would be more efficient to allow the state court action to proceed as scheduled.

While this declaratory judgment action may have a narrower focus than the underlying state action, "both actions raise[] the same core issues of law and fact." Kapiloff, 155 F.3d at 494; cf. Great Am. Ins. Co. v. Gross, 468 F.3d 199, 212 (4th Cir. 2006) (finding no threat of unnecessary entanglement because it was "not a case where many of the issues of law and fact sought to be adjudicated in the federal action [were] already being litigated by the same parties in the related state court action.") Specifically, both actions raise questions regarding the circumstances surrounding Coffee's employment and resulting termination. Furthermore, "any decision that this court makes regarding [FDIC rules and regulations] will preclude the parties from relitigating the issue[s] in the state court action." Netherlands Ins. Co. v. Cockman, 342 F. Supp. 2d 396, 409 (M.D.N.C. 2004).

Therefore, because there is a threat of unnecessary entanglement between the state and federal court, this factor weighs in favor of staying this action.

### D.     Forum Shopping

The fourth and final factor requires the court to assess whether the federal action is mere "procedural fencing" or the product of "forum shopping." Kapiloff, 155 F.3d at 493-94. "Procedural fencing generally occurs when a party is seeking to have a federal court decide issues that are already pending in state court in order to get a more favorable ruling." USF Ins. Co. v. Stowers Trucking, LLC, 684 F. Supp. 2d 786, 792 (S.D.W. Va. 2010)

At the time Tidelands filed this declaratory judgment action, the underlying state action had been pending for over two and a half years. Tidelands has offered no compelling reason for the delay. If, as Tidelands contends, this court has proper subject

matter jurisdiction, then it is unclear why Tidelands did not remove the entire case to federal court after it was initially filed in 2011. Rather, Tidelands waited over two and a half years to file this action for declaratory judgment, until after mediation efforts had failed and a jury trial date had been set.

Notably, in this action, the legal theories Tidelands asserts here are the same as the affirmative defenses it asserts in the state action. Specifically, Tidelands seeks a declaration that certain FDIC rules and regulations bar any payments to Coffee that may arise out of termination of his employment. Therefore, it is likely that Tidelands, knowing these defenses would arise in the state action, "attempted to have the [the issues] determined by the federal court before [they] arose in the context of the state proceedings." Cont'l Cas. Co., 35 F.3d at 968 (finding procedural fencing indicated when a state court action is currently pending and the subject matter of the declaratory judgment action will inevitably arise in the underlying action).

Accordingly, this factor weighs heavily in favor of staying the declaratory judgment action.

After reviewing the Nautilus factors, the court finds it would be more efficient and prevent unnecessary entanglement between the state and federal court to stay this declaratory judgment action.

## V.   CONCLUSION

For the foregoing reasons, the court **GRANTS** Coffee's motion to stay pending the outcome of the state court proceedings.

**AND IT IS SO ORDERED**.

　　　　　　　　　　　　　　　　**DAVID C. NORTON**
　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

**October 3, 2014**
**Charleston, South Carolina**